IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOY NELSON o/b/o JOSEPH TAYLOR, | |
| Plaintiff, | CIVIL ACTION FILE NO. |
| v. | 1:06-CV-772-JFK |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

## FINAL OPINION AND ORDER

Plaintiff Joy Nelson brings this action on behalf of her son, claimant Joseph Taylor, pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her application for supplemental security income.  For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

I.    **Procedural History**

Plaintiff Joy Nelson applied for supplemental security income benefits for her son, claimant Joseph Taylor, on May 9, 2002.  [Record ("R.") at 104].  After her

application was denied initially and on reconsideration, she requested an administrative hearing, which was held before an Administrative Law Judge ("ALJ") on August 23, 2005, and adjourned to September 22, 2005. [R. at 20-90]. The ALJ issued a decision on November 18, 2005, denying Plaintiff's claim. [R. at 11-19]. Plaintiff requested review of the ALJ's decision, but the Appeals Council denied her request on March 16, 2006, making the hearing decision the final decision of the Commissioner. [R. at 4-9]. On April 3, 2006, Plaintiff filed the above-styled action in this court seeking review of the final decision. [Doc. 1].

## II.    Facts

The ALJ found that claimant Joseph Taylor, who is nine years old, has attention deficit hyperactivity disorder ("ADHD"). [R. at 11, 14]. Although this impairment is "severe" within the meaning of the Social Security Regulations, the ALJ found that it did not meet or medically equal the criteria set forth for any impairment listed in Appendix 1, Subpart P, Regulations No. 4. [R. at 14]. The ALJ also found that the claimant's ADHD did not functionally equal the listings. [R. at 18]. Therefore, the claimant was not under a disability. [R. at 18-19].

The ALJ's decision [R. at 11-19] states the relevant facts of this case as modified herein as follows:

2

The claimant's mother testified that claimant has difficulty in school and that the teachers have called her with problems they have had with claimant. He has outbursts in school. Claimant takes his medication for ADHD an hour before school starts. Claimant is in Boy Scouts but does not stay with the group. He does not stay on task and has poor attention. She stated that she estimated there were five to six times during the last school year when she had phone calls or conferences with teachers or school officials about claimant in addition to those noted in the records. Although the ALJ stated that claimant's mother seemed to be a sincere witness, she noted that the conclusions claimant's mother reached regarding her son's symptoms and the extent of the related limitations are not consistent with the standard required to find her son disabled under the Social Security Act and Regulations and were not fully credible.

Claimant underwent a psychological consultative evaluation in July 2002. (Exhibit 2F; R. at 272-74). He was assessed with ADHD. His performance on tests was considered deficient, and it was opined that his inattention was impacting his potential. The psychologist recommended medication treatment. (Exhibit 2F; R. at 272-74). An August 2002 speech/language evaluation indicated moderate delays in language development for his chronological age, and therapy was advised. (Exhibit 3F; R. at 275-76).

3

State agency physicians reviewed the records in November 2002 and April 2003 and opined that claimant had at most, less than marked limitations.  (Exhibits 4F, 5F; R. at 277-88).  Claimant's pediatric records of five visits between August 2003 and April 2005 reflect assessment of ADHD, prescription of Ritalin and other general wellness care.  (Exhibit 6F; R. at 289-93).

Claimant's attorney referred him to Gary Santavicca, Ph.D., for evaluation in August 2005.  (Exhibit 7F; R. at 294-312).  Dr. Santavicca assessed claimant with a conduct disorder, intermittent explosive disorder, ADHD and receptive and expressive language disorder by history.  He opined that claimant would need to continue to take medication for his hyperactivity and attention and that he would also benefit from treatment teaching him to learn to control his anger.  Dr. Santavicca opined that claimant has: moderate to marked inattention; extreme impulsiveness; marked hyperactivity; moderate to marked difficulties in maintaining social functioning; moderate restriction of activities of daily living; moderate to marked ability to attend and complete tasks; marked to extreme ability to interact and relate with others; normal ability to move and manipulate objects; marked impairment in caring for himself; and marked limitation in health and general physical well-being.  (Exhibit 7F; R. at 294-312).

4

Reports from the claimant's school reflect that claimant has serious attention and hyperactivity problems; however, he has shown an ability to retain information and make academic progress. (Exhibits 1E, 3E, 4E; R. at 112-22, 127-35). In January 2003, a teacher commented that despite a diagnosis of ADHD, claimant has shown an ability to retain information and that his behavior is manageable. (Exhibit 14E at 19; R. at 227). On an April 2003 form, the statement, "This student is not a behavioral problem," is checked. (Exhibit 14E at 26; R. at 234). His report card for the 2004/2005 school year reflects satisfactory progress (one semester unsatisfactory grade in music, one semester unsatisfactory grade in homeroom conduct) and promotion to the third grade. (Exhibit 13E; R. at 201-08). Notes in March 2003 reflect that his teacher noticed improvement in claimant's attention with medication. (Exhibit 14E; R. at 209-39). After the hearing, claimant's attorney submitted updated evaluations from claimant's tutor and two teachers. (Exhibits 15E , 16E, 17E; R. at 240-63).

The ALJ concluded that the medical evidence demonstrates that the claimant has attention deficit hyperactivity disorder (ADHD), which causes more than minimal functional limitations, and, consequently, found that the claimant has a severe impairment.

Dr. Faren R. Akins, Ph.D., J.D., who testified as a medical expert, noted that to meet or medically equal a listing would require two areas of marked impairment. He opined that the evidence does not support that finding. Dr. Akins testified that he had reviewed the medical record and school records. (However, Exhibits 15E, 16E, 17E, R. at 240-63, were submitted post-hearing and were not reviewed by Dr. Akins.). He stated that in his opinion the record reflects that claimant has a marked impairment in the domain of attending and completing tasks but that he does not establish a second domain of marked impairment. Dr. Akins noted various comments in school records, for example, "This student is not a behavior problem" (Exhibit 14E at 26; R. at 234), and other indications that claimant was seen as having hyperactivity/attention-related academic problems but not conduct problems (Exhibit 14E at 6, 19, 35). Dr. Akins stated that although the report of Dr. Santavicca was complete, it was based on an incomplete picture of claimant. He noted that the conclusions in the report regarding claimant's conduct were almost exclusively based on the mother's reports rather than the school reports. He stated it would have been helpful for the examiner to have had the 2003 school records showing the lack of behavior problems. He disagreed with Dr. Santavicca's assessment as inconsistent with the evidence of the entire record and with the definitions of the domains under the Social Security Act and Regulations. Dr.

Akins stated that he agrees that claimant would benefit from additional help but found that his impairment just does not reach the level required for disability under the Act.

The ALJ then discussed the materials not presented to the medical expert and noted that the review of the domain assessments of claimant's teachers for the last school year (2004-2005) and this school year (about six weeks into the year) and his tutor who sees him about three times a week in a one-on-one basis "was interesting." (R. at 18). All three rate claimant in the marked to extreme level in acquiring and using information and attending and completing tasks. (Exhibits 15E, 16E, 17E; R. at 240-63). The ALJ stated that it is understandable how from the teacher's perspective these two domains might blend together; however, under the Act, a marked limitation in the area of acquiring and using information would be equivalent to being two to three standard deviations below the mean on standardized testing. The ALJ found that claimant's report card does not support a limitation of this extent in the domain of acquiring or using information. Noting that claimant's teacher from last year assessed him as having moderate limitation in the domain of interacting with others, the ALJ stated this assessment is consistent with other comments in the school records.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

7

## III.    Standard of Review

Social Security law provides that an individual under the age of eighteen will be considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 1382c(a)(3)(D).

Social Security regulations provide a sequential evaluation process consisting of three steps when determining if a child is disabled.  20 C.F.R. § 416.924(a). Whether the child is engaged in substantial gainful activity is the first issue to be addressed by the ALJ.  If the child is engaged in such activity, then he is not disabled. Otherwise, the ALJ must then determine at the second step whether the child has a severe impairment.  Id.  The child is not disabled if he does not have a severe impairment.  But if he does, then the ALJ must determine whether the child has an impairment that meets, medically equals, or functionally equals the Listings of

8

Impairments. Id. The child is disabled if he has such an impairment and if it meets the duration requirement. 20 C.F.R. § 416.924(d).

The scope of judicial review of the Commissioner's decision is limited. The court's function is (1) to determine whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner and (2) whether the Commissioner applied proper legal standards. See Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984). Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   Findings of the ALJ

The ALJ made the following findings:

1. The claimant has never engaged in substantial gainful activity.

2. The medical evidence establishes that the claimant has attention deficit/hyperactivity disorder ("ADHD"), which constitutes a severe impairment.

3. The medical evidence further establishes that the claimant does not have an impairment or combination of impairments that meets or medically equals the criteria for any listed impairment.

9

4.     Although claimant's mother seemed to be sincere witness, it appears that the conclusions she has reached regarding her son's symptoms and the extent of the related limitations are not consistent with the standard required to find her son disabled under the Social Security Act and Regulations and, therefore, are not fully credible.  (SSR 96-7p).

5.     The evidence establishes the following functional limitations resulting from the combined effect of all of the claimant's impairments and reasonably related symptoms: less than marked limitations in the domain of acquiring and using information; marked limitations in the domain of attending and completing tasks; less than marked limitations in the domain of interacting and relating with others; no limitations in the domain of moving about and manipulating objects; no to less than marked limitations in the domain of caring for yourself; and no to less than marked limitations in the domain of health and physical well-being.

6.     The claimant's impairment does not functionally equal the listings.

7.     The claimant has not been under a disability at any time through the date of this decision. (20 C.F.R. 416.924(d)(2)).

[R. at 18-19].

## V.     Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that claimant Joseph Taylor had never engaged in substantial gainful activity.  [R. at 18].  At the second step, the ALJ determined that the claimant's ADHD was a severe

10

impairment.  [R. at 18].  This condition is included in the Listing of Impairments, but the ALJ found that the claimant's ADHD does not meet, medically equal, or functionally equal the criteria necessary to establish disability.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.11.  Plaintiff argues that the ALJ failed to apply proper legal standards and that her decision is not supported by substantial evidence.  [Doc. 12].

In reaching her decision that the claimant was not disabled, the ALJ relied heavily on the opinion of the medical expert, Dr. Akins.  Plaintiff argues that the ALJ failed to utilize the medical expert properly in a number of ways.  Plaintiff contends that the ALJ cut off relevant testimony regarding medical equivalence.  According to Plaintiff, the ALJ also erred because she did not reopen the hearings and allow the medical expert to consider three evaluations completed by the claimant's teachers and submitted to the ALJ after the administrative hearing.  Plaintiff contends that the ALJ used the medical expert's credibility findings rather than making her own.  Plaintiff also argues that the ALJ and Appeals Council erred in rejecting the findings of two examining psychologists in favor of the medical expert, who did not examine the claimant.  Finally, Plaintiff argues that the case should be remanded because the record is confused.

11

### A.    Medical Equivalence

If a claimant's condition is described in the Listing of Impairments but does not meet the necessary criteria of the Listing, the claimant nevertheless will be found disabled if his condition is the medical equivalent of the Listing.   20 C.F.R. § 416.926(b)(1).   Medical equivalence is established if the claimant has "other findings related to [his] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 416.926(b)(1)(ii).   In the present case, claimant Joseph Taylor was found to have ADHD, which is described in the Listing of Impairments.   20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.11.   It was, therefore, necessary for the ALJ to determine whether there are other findings related to the claimant's ADHD which are at least equally medically significant to the required criteria of Listing 112.11.

Plaintiff correctly points out that when determining whether an impairment medically equals a Listing, the ALJ is required to "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner."  20 C.F.R. § 416.926(c).   At the administrative hearing, the ALJ called Dr. Faren Akins to testify as a child psychology medical expert.   [R. at 30].   Plaintiff's attorney, near the end of the hearing, asked Dr. Akins the following question: "[A]ssuming that . . . [the claimant] does not meet any specific listing, when you put all this stuff together

and if you accept what the mother says, is it your opinion that this person, this child could equal the intent of the listing even though he doesn't actually meet any single listing?"  [R. at 56].  Dr. Akins asked the ALJ for clarification, who responded, "[E]ither the person medically meets the listing or then you go to the functional analysis that you went through.  I have not applied the theory that this lawyer is supposing."  [R. at 56].  Dr. Akins then testified, "[G]iven that I've never done such an analysis and I'm not entirely certain that there's any real discussion of that in our disability manual, I'm not entirely sure how that's supposed to work."  [R. at 57].  At this point, the ALJ ended the discussion of medical equivalence and stated, "Maybe [the attorney] needs to take that up on appeal or discuss it with a legislator, but it's a theory I'm not going to adopt.  I want to just cut this off, we have heard enough testimony."  [R. at 57].  The ALJ then dismissed Dr. Akins.  [Id.].  Plaintiff argues that the ALJ erred when she did not permit the medical expert to testify as to whether the claimant's impairments equaled a Listing without meeting one.  The court finds Plaintiff's argument persuasive.

The Commissioner contends that the ALJ was not required to allow the medical expert to answer the hypothetical posed by Plaintiff's attorney because he asked the expert to "accept what the [claimant's] mother says. . . ."  [Doc. 13 at 11; R. at 56].

13

Citing the relevant regulations, the Commissioner argues that the "other findings" that must be considered when determining medical equivalency do not include subjective complaint testimony.  20 C.F.R. § 416.926(b)(1)(ii).  While the Commissioner appears to be correct on this point of law, the argument as applied to the facts of this case lacks persuasiveness because the ALJ did not cut off questioning on only the subjective testimony issue.  Instead, the ALJ refused to allow Dr. Akins to offer any opinion whatsoever regarding medical equivalence.  [R. at 56-57].

The ALJ ruled that medical equivalence was not a relevant issue and abruptly ended the medical expert's testimony.   As discussed *supra*, under the relevant regulations, the ALJ was required to consider the opinion of Dr. Akins when she addressed the issue of whether the claimant's ADHD medically equaled a Listing.  20 C.F.R. § 416.926(c).  Because the ALJ did not allow the medical expert to testify about this issue, the ALJ did not apply the proper legal standards, and her decision regarding medical equivalency was not supported by substantial evidence.  Remand is warranted on this basis.

### B.    Post-Hearing Teachers' Questionnaires

Plaintiff also argues that the ALJ erred because she did not reopen the hearings and allow Dr. Akins, the medical expert, to consider three evaluations completed by

14

teachers who have worked closely with claimant Joseph Taylor. The ALJ wrote in her decision, "Dr. Akins noted that to meet or medically equal a listing would require two areas of marked impairment. He opined that the evidence does not support that finding." [R. at 14]. The ALJ continued, "Dr. Akins testified that he had reviewed the medical record and school records. . . . He stated that in his opinion the record reflects that claimant has a marked impairment in the domain of attending completing tasks, but does not establish a second domain of marked impairment." [R. at 17]. Dr. Akins testified at the administrative hearing that he disagreed with the conclusions reached by an examining psychologist, Dr. Santavicca, who opined in a "Child's Impairment Questionnaire" that the claimant had marked limitations in numerous areas. [R. at 296-306]. Dr. Akins repeatedly cited the lack of confirming evidence from the schools as the primary reason for finding that the claimant did not have a second domain of marked impairment. Dr. Akins also cited the lack of confirming school evidence as the chief reason for doubting Dr. Santavicca's findings. [R. at 33-35, 38-40, 50-51].

After the hearing, Plaintiff's counsel submitted Child's Impairment Questionnaires completed by the claimant's longtime tutor and two of his classroom teachers. [R. at 240-63]. The ALJ reviewed the questionnaires and wrote that she found them "interesting." [R. at 18]. She noted that all three of the educators found

15

that the claimant had "marked" to "extreme" limitations in acquiring and using information and attending and completing tasks. [R. at 18, 240-63]. Although it seems clear that the questionnaires are relevant evidence supporting Plaintiff's claim, the ALJ decided not to submit them to the medical expert for his consideration. The ALJ stated in her decision that the questionnaires were not consistent with other school records and that the teachers were confused about the definitions of the degree of limitations. The ALJ also stated that the teachers blended one domain with another. [R. at 18]. The court finds that the ALJ's decision to reject the post-hearing questionnaires without submitting them to the medical expert was not supported by substantial evidence.

The ALJ found that the questionnaires were not consistent with the claimant's other school records. But it was the lack of documentation provided by the claimant's school that convinced Dr. Akins to find that the claimant was not disabled and to reject the opinion of Dr. Santavicca. The post-hearing questionnaires provided by the claimant's teachers were precisely the sort of documentation that Dr. Akins found lacking. Because these questionnaires confirmed Dr. Santavicca's opinion and could have caused Dr. Akins to change his opinion, the ALJ was obligated to let him see them.

16

The ALJ wrote in her decision that the teachers must have been confused about the meanings of "marked" and "extreme" limitations and that they blended together the two separate domains of "acquiring and using information" and "attending and completing tasks." [R. at 18]. The ALJ's reasoning on this issue is not persuasive. The teachers had in front of them the Social Security Administration's definitions of "marked" and "extreme," as well as descriptions of the domains of "acquiring and using information" and "attending and completing tasks." [R. at 240-63]. The ALJ pointed to no evidence to support her contention that the claimant's teachers were confused when they completed the questionnaires.

The Commissioner notes that Plaintiff's counsel is at least partly to blame for the fact that none of the questionnaires were presented to the medical expert at the time of the hearing. One of the questionnaires was completed approximately eight months before the September 2005 hearing, and Plaintiff's counsel has offered no reason why he waited until after the hearing to submit this piece of evidence. Counsel has also not explained why he did not have the claimant's long-time tutor complete a questionnaire before the hearing. [R. at 253]. As the Commissioner notes, 20 C.F.R. § 416.1540(b)(1) provides that a claimant's representative has a duty to "[a]ct with reasonable promptness to obtain the information and evidence that the claimant wants

17

to submit in support of his . . . claim, and forward to [the Commissioner] as soon as practicable."

Caselaw indicates that the lack of diligence exhibited by Plaintiff's counsel may be relevant to an award of attorney's fees. See Wimpy v. Barnhart, 350 F. Supp. 2d 1031, 1034-36 (N.D. Ga. 2004). However, the Commissioner has offered nothing which would support a finding that counsel's lack of diligence should have impacted the ALJ's decision on whether to submit the questionnaires to the medical expert and reconvene a hearing in order to allow the expert to offer his assessment of this evidence. Also, as Plaintiff's counsel points out, the ALJ told him at the conclusion of the administrative hearing, "You may have two weeks to provide any additional evidence that you wish." [R. at 61A]. The ALJ received the questionnaires from Plaintiff's counsel apparently in a timely manner, and she evaluated them herself. But she did not seek the medical expert's opinion on them. As discussed *supra*, in light of the ALJ's significant reliance on Dr. Akins' opinion and the unique role of Dr. Akins as a medical expert, the court finds that this case should be remanded to the ALJ in order to have Dr. Akins consider the three teachers' questionnaires.

**C.     ALJ's Credibility Determination of Plaintiff**

18

Plaintiff next argues that the "ALJ made no independent findings concerning Plaintiff's credibility, as she must." [Doc. 12 at 13]. Instead, according to Plaintiff, the ALJ "simply relied upon Dr. Akins's testimony that some of the school records did not support Joseph's mother's representations." [Doc. 12 at 13]. When the ALJ's decision is based upon subjective testimony and a credibility determination is a critical factor in that decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983). The Eleventh Circuit has stated, "A lack of an explicit credibility finding becomes ground for remand when credibility is critical to the outcome of the case." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982)).

In the present case, the ALJ made an explicit credibility determination of Plaintiff. The ALJ found that although Plaintiff, the claimant's mother, "seemed to be a sincere witness," her testimony was not fully credible. [R. at 13]. However, as Plaintiff argues, the ALJ relied in large measure on the opinion of Dr. Akins in making her credibility finding. [R. at 17-18]. Dr. Akins, in turn, discounted the statements made by Plaintiff because of a lack of confirming evidence found in the school records. [R. at 33-57]. Thus, the issue of the post-hearing teacher questionnaires arises again,

this time with respect to Plaintiff's credibility.  This case is already being remanded so that the medical expert can consider the three questionnaires.  In light of this fact, the court directs the ALJ to first take into account Dr. Akins' reconsidered opinion before making a new credibility determination with respect to Plaintiff's testimony.

### D.   ALJ's Rejection of Examining Psychologists' Opinions

Plaintiff's final argument regarding Dr. Akins, the medical expert, is that the ALJ and the Appeals Council erred when they rejected the findings of two examining psychologists in favor of Dr. Akins, who did not examine claimant Joseph Taylor. [Doc. 12 at 16-17].  Plaintiff notes that two psychologists, Drs. Rush and Santavicca, examined the claimant and found disabling mental conditions. Dr. Rush diagnosed the claimant with ADHD and measured a full scale IQ of 69.  [R. at 272-74].  Dr. Rush found that the claimant's "inattentive behaviors have precluded him from learning things such as the alphabet" and that his "inattentive and hyperactive behaviors likely preclude him from focusing on educational information." [R. at 274]. Dr. Santavicca, as noted by the ALJ, opined that the claimant had at least a marked degree of impairment in the following categories: impulsiveness; hyperactivity; maintaining social functioning; interacting and relating with others; caring for himself; and health and general physical well-being.  [R. at 13, 301-06].

20

Although Dr. Akins, the medical expert, did not examine the claimant, both the ALJ and the Appeals Council gave his findings more weight than the findings made by Drs. Rush and Santavicca.  The ALJ stated in her opinion that in reaching her decision, "substantial persuasive weight was given to the medical expert."  [R. at 18]. The Commissioner argues that Dr. Akins, as the medical expert, "was in the best position to give an opinion of disability because he had access to medical and school records, and he reviewed these documents in the case."  [Doc. 13 at 20-21].

The court finds that substantial evidence does not support the ALJ's decision to reject the opinions of the two examining psychologists in favor of the non-examining psychologist, Dr. Akins.  As the Eleventh Circuit has explained, the "opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician." Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985) (quoting Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981)).  "[R]eports of physicians who do not examine the claimant, taken alone, do not constitute substantial evidence on which to base an administrative decision." Spencer ex rel. Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985).  There may be cases in which a non-examining physician's opinion, when combined with other evidence, is entitled to more weight than the opinion of an examining physician.  However, in the present

21

case, the ALJ's decision to rely significantly on the opinion of Dr. Akins is problematic for at least two reasons. First, it is significant that there was not one but two examining psychologists who found more significant limitations than those found by the non-examining medical expert, Dr. Akins. Second, and more importantly, Dr. Akins was not provided with the post-hearing questionnaires completed by the claimant's teachers, and as discussed *supra*, his opinion was based in large part on the lack of school documentation supporting a finding of disability. The court finds that the ALJ's decision to discredit the opinions of examining psychologists Drs. Rush and Santavicca and to adopt the opinion of non-examining psychologist Dr. Akins was not the result of an application of proper legal standards and was not supported by substantial evidence.

### E.      Confusion of the Record

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Without a full and fair record, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Id. Plaintiff argues that the case should be remanded because the record is not full and fair, but confused. [Doc. 12 at

10-12].  There is no question that there are a number of exhibits in the transcript which are misidentified.  As the Commissioner acknowledges, "The transcript in this case contains multiple instances where exhibits were misidentified.  And the process of identifying the correct exhibit and page numbers the ALJ and the ME discussed takes time and is admittedly difficult."  [Doc. 13 at 7-8].  The Commissioner, however, argues that remand is not warranted on this basis because it is not impossible to sort out the errors in the record.  If this were the only problem with the case, the undersigned would agree with the Commissioner that remand would not be necessary. But given the fact that remand is warranted on numerous issues discussed previously, the Commissioner upon remand should correct the transcript so that it accurately identifies the various documentary evidence.

## VI.    Conclusion

For all the foregoing reasons and cited authority, the undersigned **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** to the ALJ for further consideration in accord with the discussion *supra*.

The undersigned also **ORDERS** that Plaintiff's counsel be required to apply for attorneys fees under 42 U.S.C. § 406(b) **within thirty days** of the date the Commissioner issues her determination of the amount, if any, of Plaintiff's past due

23

benefits.  See Bergen v. Commissioner of Social Security, 454 F.3d 1273, 1278 n. 2

(11th Cir. 2006) (citing McGraw v. Barnhart, 370 F. Supp. 2d 1141, 1154 (N.D. Okla.

2005)).

     **SO ORDERED**, this 22nd day of December, 2006.


_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE


24